DAVID L. ANDERSEN (S.B. NO. 50010)
ANDERSEN & ZIMMER
385 GRAND AVENUE, SUITE 300
OAKLAND, CA 94610
(510)835-4952 FAX (510)835-4958

MARK R. VERMEULEN
LAW OFFICES OF MARK VERMEULEN
755 FLORIDA STREET, No. 4
SAN FRANCISCO, CA 94110
(415)824-7533 / FAX (415)824-4833

ATTORNEYS FOR CHARLES HEARD

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> ALFONSO WILLIAMS, et al., <br><br> Defendants. | Action No. CR 13-0764 WHO <br><br> **DEFENDANTS' REPLY TO GOVERNMENT MEMORANDUM REGARDING PROPOSED PROTECTIVE ORDER** <br><br> Date: May 8, 2014 <br> Time: 1:30 p.m. <br> Dept. Hon. William H. Orrick |

**INTRODUCTION:**

In its Response the Government suggests that the defendants are attempting to take back areas of agreement previously settled. United States' Response To Defendants' Memorandum Re: Protective Order, (Hereafter "Gov. Response**,"**) Doc. 96 at 1. However, that is not the case. Not all of the defendants were before the Court at the time discussions regarding a protective order were initiated. Some defense counsel volunteered to work on the parameters of an order, and they accomplished a great deal. However, these attorneys did not claim to have authority to bind all counsel, nor could they make that claim. Clients who were not then before the Court had no counsel to grant that authority. Accordingly, there was never an agreement regarding the provisions to which the defense now objects.

/ / /

/ / /

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Williams CR 13-0764 WHO - 1 -
Defs' Reply To Response Re Protective Order

**ARGUMENT:**

**I. THE GOVERNMENT'S REQUESTED ORDER IS NEITHER REASONABLE NOR NECESSARY**

The Government requests ex parte and under seal access to the defendants' discovery logs. The Government suggests that this is reasonable and necessary, but bases this argument on two mistaken assumptions. The first assumption is that a violation of the protective order must have occurred if copies of documents are found in the hands of people not covered by the protective order. The second assumption is that disclosure of the identities of the experts and consultants contained in the logs is inevitable. In effect, the Government would only be obtaining information to which it would be entitled in any case.

The mistaken nature of these assumptions will be discussed in turn.

**A. Documents Which The Government May Believe Are Protected Have Already Been Disclosed In Other Prosecutions And Accordingly Are Not Subject To The Proposed Order**

The Government assumes that a violation of the protective order will have occurred if copies of protected documents are in the hands of persons not covered by the order. For example, the Government states:

> [I]t must be emphasized that, by the proposed protective order, the government would only have access to the names of which eyes have seen the government's production *after a leak has occurred and with the authorization of the Court.* In other words, the government would be allowed to petition the Court to investigate only if confidential materials had been improperly made public . . . .

(Gov. Response at 2:27-3:3, emphasis in original.) This assertion is repeated at 5:2-4:

> It is simply identifying the individuals with whom the attorney has shared the government's materials – materials that, by the time they would be viewed, *had already been leaked in violation of the Court's order*. (Emphasis added.)

This assumption on the part of the Government is simply not accurate. Crimes or other acts which are charged in the First Superseding Indictment as substantive crimes and/or overt acts in support of the RICO conspiracy have already been prosecuted in state or federal court. As an example, the defendants attached to their initial memorandum an information filed in the San Francisco Superior Court. *See* Doc. 91, Ex. B. That information alleged the same offense as that alleged as Overt Act S in this First Superseding Indictment. *See* Doc. 31 at 8: 6. Another example is Counts Three, Four, and Five of the Superseding Indictment. *See* Doc. 31 at 10:5-

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Williams CR 13-0764 WHO     - 2 -
Defs' Reply To Response Re Protective Order

1  11:20. Those counts involve the homicide of Calvin Sneed, which had also been charged in the
2  San Francisco Superior Court. These are only two examples. Other offenses or overt acts alleged
3  in the Superseding Indictment have also been charged previously in state court or federal court.

4        Discovery was provided by the prosecutors in these earlier prosecutions. The defendants
5  in those cases may also have obtained relevant documents by other means. The result is that the
6  Government may mistakenly believe that there has been a breach of the protective order when
7  the copy of the document in question was actually independently obtained as a result of an earlier
8  prosecution. A document obtained independently of this case would not be a protected
9  document, and its dissemination, as defense counsel sees fit, would not be a violation of this
10 Court's order.

11       The Government's request for an ex parte and under seal procedure by which it may
12 obtain access to the defendants' discovery logs is a transparent attempt to gain access to these
13 logs after depriving the defendants of the opportunity to demonstrate that no violation of the
14 protective order has occurred, and that no investigation is needed. The Government's proposal is
15 neither reasonable nor necessary.

16     **B.**    **The Identities of The Defendants' Consultants and Experts Will Not Inevitably Be Disclosed**
17
18       The Government asserts that disclosure of defense experts and consultants would provide
19 the Government with no more information than the Government would otherwise obtain: "At
20 most, that would disclose the potential engagement of an expert or an investigator of some
21 variety – no more than what the government would get in any event through the combination of
22 Fed. R. Crim. P. 12.2 and 16(b)." Gov. Response at 5:17-19. This is incorrect.

23       Under Rules 12 and 16, the Government would be entitled to the identity of the defense
24 experts, but only if that person were to be called as a witness. Under Fed. R. Crim. P. 12.2 and
25 16(b)(1)(C), the defense has no obligation to disclose an expert who will not testify. If the Court
26 grants the Government access to the defendants' discovery logs in the manner the Government
27 proposes, the protections and procedures embodied in these rules would be eviscerated.

28       Further, the Government ignores that there is a timetable for disclosure, even if the Rules
require that expert information be exchanged. The timetable is designed to ensure that the

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Williams CR 13-0764 WHO    - 3 -
Defs' Reply To Response Re Protective Order

defense need not disclose the names of experts, or the material provided to the expert, until there has been a reasonable opportunity for the defense to prepare, develop its defense, and then determine if this is a witness who should testify. *See* Defense Memorandum, Doc. 91 at 8:11-10:7. This timetable is not one, as the Government suggests, that requires disclosure "very early in the process." *See* Gov. Response at 5:15. In fact, Rule 12.2 requires disclosure, if there is to be one, rather late in the process:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must—within the time provided for filing a pretrial motion or at any later time the court sets—notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Rule 12.2(b). Accordingly, notice of intent to introduce expert testimony need not be given until the time set for filing pretrial motions or at a later date set by the Court. Disclosure of expert identity and reports would occur after that. The Government's proposed order ignores this timetable.

In sum, the procedure urged by the Government would force the disclosure of some information which is confidential and protected, and which would not be otherwise subject to disclosure. Even if some information were subject to later disclosure, the procedure urged by the Government would cause it to be disclosed prematurely. This is, again, neither reasonable nor necessary.

## II. THE DEFENDANTS' VIEW OF THE WORK PRODUCT DOCTRINE IS NOT OVERBROAD

The Government asserts that the defendants' view of the work product doctrine is overbroad. In support of that claim the Government relies on *United States v. Nobles*, 422 U.S. 225 (1975), and notes that in that case the Supreme Court determined that an investigator's notes were discoverable if the investigator testified about the notes. Gov. Response at 4:18-28. That argument merely makes the defendants' point. If the defense experts were to testify, then discovery would be proper. However, until that time, this information is protected, and *Nobles* does not hold otherwise.

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Williams CR 13-0764 WHO         - 4 -
Defs' Reply To Response Re Protective Order

The Government also asserts that the discovery logs are not work product. However, the names of persons with whom the defense has consulted and the materials which they were provided by counsel are clearly work product. In *Exxon Corp. v. Federal Trade Commission,* 476 F.Supp. 713 (D.D.C. 1979), cited by the Government (*see* Gov. Response at 5:22-25), Exxon sought the disclosure of economic panelists engaged by the F.T.C. as consultants in the case. 476 F.Supp. at 717. The court rejected Exxon's argument that their names must be disclosed:

> The attorney "work product" privilege includes material which might disclose an attorney's appraisal of factual evidence. [Citations and quotation marks omitted.] Defendants' concern that identification of the economic panelists could expose significant aspects of the Commission's theory of the Exxon case seems plausible in the context of this intensely litigated matter. Accordingly, the names of the economists are exempt from disclosure under exemption (b)(5) [of the Freedom of Information Act] as attorney "work product."

*Id.* (footnote omitted); *id.* at 719 The court later noted that "[t]he economists' names could be bright guides to defendants' theory of the Exxon case, particularly if disclosed to this sophisticated plaintiff. Defendants are therefore entitled to withhold those names pursuant to the attorney "work product" privilege of exemption (b)(5)."). What was true in *Exxon Corp.* is true here.[1]

### III. ALLOWING THE GOVERNMENT EX PARTE AND IN CAMERA ACCESS TO THE DEFENDANTS' DISCOVERY LOGS WOULD NOT RESULT IN A MORE EFFECTIVE PROTECTIVE ORDER

The Government points to several examples of what it believes were prior leaks in other cases. These leaks were apparently unintentional. The Government then suggests that its proposed protective order will have more "teeth." Gov. Response at 3:15-17. However, that is not the case.

---

[1] The Government also cites to *Oregon Health & Sci. Univ. v. Vertex Pharm., Inc.*, CIV. 01-1272-HU, 2002 WL 31968995 (D.Or. 2002), stating that "the District Court upheld turning over names of experts viewing materials, despite an objection that such a disclosure would invade the work product privilege." Gov. Response at 5:25-28. A reading of the entire opinion, however, discloses that the court directed that "*each party* is ordered to identify by name and city of residence each expert reviewing the other's confidential documents," and "*each party* will disclose to the other the name and city of residence of every expert who will review documents designated as confidential under the protective order." *Id.* at *8 (emphasis added). Further, that court was attempting to fashion a procedure which would protect the confidentiality of the parties' intellectual property and prevent their theft. That consideration is not present in this case.

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Williams CR 13-0764 WHO - 5 -
Defs' Reply To Response Re Protective Order

There will be a record of who received discovery and what they received under either the Government's proposal or the defendants' proposal. That log will be available under either proposal should the Court determine that an investigation into a possible leak is appropriate. The significant difference between the two proposals is that under the defense version, the defendants would be given the opportunity to demonstrate that there was no violation, and therefore no need for an investigation. Adopting a procedure that will lead to searches for leaks where none occurred does not give more teeth to a protective order. Instead, it needlessly invades each defendant's protected trial strategy, preparation, and work-product, in violation of the Federal Rules. It would also violate the defendants' rights under the Fifth, Sixth, and Eighth Amendments, to due process, a fair trial, the effective assistance of counsel, and a reliable penalty determination.

**CONCLUSION:**

The Government raises, but does not advocate, the use of a taint team if the point is reached where the Court is contemplating the disclosure of a defendant's discovery log. However, the question of whether a taint team should be utilized is premature until Court is aware of the nature of the alleged violation and the type of investigation for which a disclosure is contemplated. Once that is known, the parties and the Court will be in a better position to determine if a taint team is appropriate.

In the meantime, the Government's request for ex parte and under seal access to the defendants' discovery logs is neither reasonable nor necessary and must be rejected.

DATED: April 24, 2014

Respectfully Submitted,

_____/s/_____
David L. Andersen
Mark Vermeulen
Attorneys for Charles Heard
On Behalf of All Defendants

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Williams CR 13-0764 WHO      - 6 -
Defs' Reply To Response Re Protective Order