UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REGINALD ELMORE, et al,<br><br>Defendants. | Case No. 13-cr-00764-WHO<br><br>**ORDER REGARDING DEFENDANT ELMORE'S MOTION TO COMPEL**<br><br>Re: Dkt. Nos. 309, 315 |

Defendant Reginald Elmore continues to seek discovery relevant to the charges against him. Dkt. No. 309. Defendant Charles Heard filed a joinder in Elmore's motion. Dkt. No. 315.

At the hearing on April 3, 2015, the government gave a detailed overview of the evidence it is continuing to withhold from all of the defendants under the Jencks Act: approximately 120 - 130 investigative interviews, most of which are one to two pages in length and many of which are repeated interviews with the same witnesses; several dozen recordings of statements, some of which are being or may be transcribed; transcripts of perhaps 12-15 sessions of Grand Jury testimony; transcripts from the preliminary hearing in the *Sneed* case and other state court proceedings (to which defendants already have access from other sources and likely already have), and trial transcripts (to which defendants likewise have access). The government candidly acknowledged that the evidence against Elmore is primarily from witnesses whose identities the government is not willing to disclose at present because of safety concerns and because there is no requirement under the law that it do so.

Elmore asks that I compel the government to disclose the bases for its allegation that he was complicit in the Helton and Turner homicides. He suggests that I use the case management authority as discussed in *United States v W.R. Grace*, 526 F. 3d 499 (9th Cir. 2008) (en banc) to order that the government provide an amalgamated summary of multiple witnesses' statements that implicate Elmore in the alleged offense, scrubbing any identifying information. As a lesser

measure, he asks that I review the statements myself to see if they are properly being withheld.

It is difficult to assess whether Elmore and Heard have sufficient time to investigate this case, given the information provided thus far and that which will be disclosed pursuant to the Order Setting Pretrial and Trial Schedule issued contemporaneously with this Order, without some additional explanation of the government's case now. Elmore's and Heard's experienced counsel represent that they have never been in a case where so much critical information has been shielded from their view in discovery; the government asserts that it is following the same protocol it always follows and, in any event, the defendants have more discovery than they have described to date.

At present, I will accept the government's perspective that these defendants have the necessary discovery and will have sufficient time to investigate and prepare their defenses. I will not review the witness statements or other material *in camera*, as counsel for Elmore suggested, to ensure that the government is properly determining the material described above as Jencks. Given that the government's case is built on eye witness testimony and in light of the security concerns it has raised, I am also not convinced that requiring the government to provide amalgamated witness statements will materially advance Elmore's (or any other defendant's) knowledge of the government's case--I would expect that the government would scrub all of the identifying information from the statements, which will likely leave very little new information. I do not want the parties tied up in battles over the sufficiency of those disclosures, which would probably last until the statements and other pertinent information are disclosed under the Order Setting Pre-trial and Trial Schedule. That said, I reminded the parties at the hearing of Deputy Attorney General Ogden's 2009 Memorandum for Department Prosecutors that "early and broad discovery" promotes "the truth-seeking mission of the Department" and suggest that the prosecutors consider whether there is additional information that can be provided consistently with their obligations.

In this light, I am concerned about what appears to be the over-redaction of civilians' names in the discovery that has been provided to the defense. I credit the government's concerns over witness safety. But having reviewed the primary and supplemental incident reports documenting the Helton and Turner homicides, which include obviously critical information for

2

defendants Elmore and Heard, I find no reason to preclude those defendants' investigators and lawyers from interviewing the civilian witnesses from the crime scene (who were not witnesses to the crime itself).  None of the witnesses whose name was redacted reported seeing the shootings or identifying any perpetrator, so there is no reason to believe that such a witness would be at risk, particularly if the witness's name is only provided under the Heightened Protective Order I entered on February 13, 2015.  Dkt. No. 291.[1]  I direct the government by April 24, 2015, to unredact information related to the identities of such witnesses and, in addition, to unredact any other information in those reports that it concludes is not covered by the Jencks Act, and to provide the revised versions of the referenced reports to defendants Elmore's and Heard's counsel and investigators under the Heightened Protective Order.

**IT IS SO ORDERED**.

Dated: April 10, 2015

WILLIAM H. ORRICK
United States District Judge

---

[1] Elmore's counsel noted at the hearing that the government was preparing to redact the names of witnesses from a police report he had yet to receive involving a shooting at 1161 Scott Street in San Francisco in 2008, an incident which may or may not be connected to this case.  Unless that shooting and what the witness saw or did is relevant to the culpability of the defendant(s), consistent with this order I would expect that the names will not be redacted.

3