1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,              Case No. 13-cr-00764-WHO

         Plaintiff,
8
                                            **ORDER ON ACTUAL INNOCENCE**
9         v.                                **AND LEGAL INSUFFICIENCY**

10   REGINALD ELMORE,                        Re: Dkt. No. 2681

         Defendant.
11

12

13          The Ninth Circuit reversed and remanded my order denying petitioner Reginald Elmore's

14   initial 28 U.S.C. § 2255 habeas petition because I failed to consider whether murder under

15   California law constituted a crime of violence, the predicate for the charged VICAR murder

16   offenses under 18 U.S.C. § 1959(a)(1). *U.S. v Elmore*, 118 F.4th 1193 (9th Cir. 2024). It wrote

17   that the proper "analysis requires determining whether California murder 'has as an element the

18   use, attempted use, or threatened use of physical force against the person or property of another,'

19   18 U.S.C. § 924(c)(3)(A), such that Elmore's charged VICAR murder offenses are a valid

20   predicate for his § 924(j)(1) conviction." *Elmore*, 118 F.4th at 1202. It directed that I apply the

21   modified categorical approach to do so.

22          It also directed me to "address the government's procedural arguments," *id.*, which I had

23   originally declined to do because deciding the merits seemed like a cleaner resolution. The

24   government argued in the context of Elmore's original petition, and argues now, that the petition is

25   time-barred. Elmore contends that his default should be set aside because he has asserted a

26   colorable claim of "actual innocence," which is referred to as a "gateway" to overcome procedural

27   default. He pleaded guilty to Counts 1 (membership in a criminal enterprise whose activities

28   included murder) and 8 (use or possession of a firearm during VICAR murder) and the

government dismissed VICAR murder counts 6 and 7 under 18 U.S.C. § 1959(a)(1) involving the murders of Isaiah Turner and Andre Helton, so he has to show actual innocence for all three VICAR counts, including the two dismissed counts, to reach the gateway.  Despite admitting guilt for Count 8, for which California murder was the predicate crime, he contends that after the Supreme Court's decision in *Borden v. United States,* 593 U.S. 420 (2021), he is actually innocent of Counts 6, 7, and 8 today because California murder contains a *mens rea* of recklessness, which means that it is not a crime of violence under the VICAR statute.

The application of the doctrine of actual innocence is very thorny, particularly in the context of VICAR counts that use other crimes (here, California murder as a crime of violence) as a predicate to the count in the indictment.  Application of the doctrine of actual innocence requires factual innocence, not mere legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  I conclude that Elmore's claim is one of legal insufficiency.  The murders of Helton and Turner were not reckless, and a reasonable juror could have found Elmore guilty of their commission.  Elmore's argument is purely legal.  The modified categorical analysis precludes consideration of the facts of a case; it compares elements of the state and federal crimes to see if they match.  That analysis may, as Elmore argues, result in a finding that California murder is not a crime of violence under The VICAR statute.  But cases that have found actual innocence have all reevaluated the facts of a conviction after the law or evidence giving rise to the claim of innocence is identified.  No such reevaluation is even allowed here.

For the reasons discussed below, I find that Elmore has not raised a colorable claim of actual innocence sufficient to overcome procedural default.  The parties will have to address the second procedural issue raised by Elmore—ineffective assistance of counsel—in the next phase of this case.

## DISCUSSION

Elmore has conceded procedural default for failing to raise his claims in the underlying proceeding; he failed to appeal his conviction in a timely manner.  The question is whether he can overcome that default.  One way to do that is to demonstrate actual innocence.  *McQuiggin v Perkins*, 569 U.S. 383, 396 (2013).

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.    "Actual innocence"

It is only in "extraordinary circumstances" that courts entertain the merits of claims that are procedurally barred. *Murray v. Carrier*, 477 U.S. 478, 487 (1986). One such "extraordinary circumstance" arises where a court considering barred claims would allow it to "correct[] a fundamentally unjust incarceration," such as the imprisonment of an actually innocent person. *Schlup v. Delo*, 513 U.S. 298, 320-21 (1995). A court should excuse procedural default when failure to do so would result in a "fundamental miscarriage of justice." *Id.* at 321.

The Supreme Court has constrained the circumstances in which a petitioner might invoke that excuse. *See Sawyer v. Whitley*, 505 U.S. 333, 340-341 (1992); *Murray*, 477 U.S. at 487. It clarified in *Bousley v. United States* that "actual innocence" means "factual innocence, not mere legal insufficiency." 523 U.S. at 623. That principle was reflected in subsequent decisions considering what arguments could propel an otherwise procedurally defaulted habeas petition through to the merits stage. *See e.g.*, *Gandarela v. Johnson*, 286 F.3d 1080, 1085 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 321) ("The required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to legal innocence as a result of legal error."); *see also Smith v. Murray*, 477 U.S. 527, 537 (1986) (describing "actual" innocence as distinct from "legal" innocence in the habeas context); *Larsen v. Soto*, 742 F.3d 1083, 1095-96 (9th Cir. 2013) (finding that the *Schlup* standard "is demanding, and precedents holding that a habeas petitioner satisfied its strictures have typically involved dramatic new evidence of innocence.") (citation omitted). As the Court explained in *McQuiggin v Perkins*, "[t]hese decisions 'seek to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case.' *Schlup*, 513 US, at 324." 569 U.S. 383, 393 (2013).[1]

---

[1] Recently, in *Lairy v. United States*, the Seventh Circuit considered whether a petitioner who argued he was actually innocent of the Armed Career Criminal Act's ("ACCA") mandatory sentence because his state law cocaine offenses did not qualify as "serious drug offenses" raised a colorable actual innocence claim such that he could overcome procedural default of his habeas claims. 142 F.4th 907, 914 (7th Cir. 2025). The court observed that "[a]lthough simple on its face, th[e] argument [before the court] implicates several questions about the nature of actual innocence." Because Lairy did not rely on a change of law to assert actual innocence (he only argued that his offender status was misclassified from the start under the ACCA), the court "once again [did] not answer whether a change in law can demonstrate actual innocence." *Id.*, n.6. It did

1    To establish actual innocence, the petitioner must demonstrate "that no reasonable juror

2  would have found the defendant guilty." *Schlup* at 329. If the conviction results from a plea

3  bargain where the government has dismissed more serious charges in order to secure agreement,

4  the petitioner must show actual innocence of the dismissed charges. *Bousley*, at 624.

5    The Ninth Circuit has developed a more expansive view of actual innocence than other

6  Circuits, to include at least some cases where a change in the law would make the defendant

7  innocent of the charge for which he was prosecuted. Its perspective on actual innocence

8  seemingly narrows what type of legal insufficiency is blocked from the gateway. To illustrate: In

9  *U.S. v. Ovsepian*, the Ninth Circuit explained that "'[p]risoners asserting innocence as a gateway

10  to defaulted claims must establish that, in light of new evidence' *or new legal developments*, 'it is

11  more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a

12  reasonable doubt.' *Larsen v. Soto*, 742 F 3d 1083,1088 (9th Cir. 2013) (first alteration in original)

13  (quoting *House v. Bell*, 547 U.S. 518,536-37 (2006).'" 113 F. 4th 1193, 1201 (9th Cir. 2024)

14  (emphasis supplied). In *Ovsepian*, the defendant's conviction for aggravated identity theft was

15  vacated as a result of a change in the law arising from a Supreme Court opinion requiring use, not

16  merely possession, of the identifying information. *See also Vosgien v. Persson*, 742 F.3d 1131,

17  1135 (9th Cir. 2014) (after clarification by the state appellate court after the statute of limitations

18  had run, conviction for compelling prostitution reversed where conduct was bribing daughter to

19  have sex with him, not inducing someone to engage in prostitution with others). [2]

---

point out that this was a question that it had repeatedly avoided. *See id.* (citing *Lund*, 913 F.3d at 667–68 (where the Seventh Circuit presented this question but rested its holding on other grounds); *Gladney v. Pollard*, 799 F.3d 889, 897 (7th Cir. 2015) (same); *Cobbs v. United States*, 141 F.4th 872 (7th Cir. 2025) (same)). I do not have the same luxury.

[2] In another case, *Allen v. Ives*, 950 F.3d 1184 (9th Cir. 2020), the petitioner "claim[ed] that he [wa]s actually innocent of a crime that would qualify him for career offender status, and [wa]s therefore actually innocent of the sentence that was imposed." *Id.* at 1188. This was enough to invoke the "actual innocence" exception to procedural default. The court explained, "[i]f Allen prevails on the merits of his claim that his Connecticut marijuana conviction was not a predicate conviction for career offender status . . . the factual predicate for his mandatory sentencing enhancement did not exist. That is, he is actually innocent of the enhancement." *Id.* at 1189. The Ninth Circuit subsequently determined that "*Allen* should be limited to petitioners who 'received a mandatory sentence under a mandatory sentencing scheme.'" *Shepard v. Unknown Party* 5 F. 4th 1075, 1077 (9th Cir. 2021).

4

1    I acknowledge the breadth of the language in *Ovsepian*.  No case that I have seen has

2    confronted facts like the ones here, however, where the defendant is arguing actual innocence not

3    because he is factually innocent of the predicate crime for application of the federal VICAR

4    murder statute, California murder, but because he is legally innocent of VICAR murder because

5    California murder is no longer a crime of violence after intervening Supreme Court decisions.  The

6    question for me is how to distinguish between legal insufficiency and actual innocence.  Errors in

7    jury instructions are in the former category, *see Gandarela v. Johnson*, 286 F.3d 1080, 1085 (9th

8    Cir. 2002), while review of the factual circumstances of a conviction after a change in the law is in

9    the latter category, *see Ovsepian*, *supra*.  This case is somewhere in between.

### B.    Elmore's Conviction

11    Elmore was one of ten defendants alleged to be members of the Central Divisadero Players

12    ("CDP"), a RICO enterprise with the purpose of "[a] [p]reserving and protecting the power,

13    territory, reputation, and profits of the enterprise . . . through the use of intimidation, violence,

14    threats of violence, assaults, and murder; [b] Promoting and enhancing the enterprise and the

15    activities of its members and associates including . . . murder, attempted murder, narcotics

16    trafficking, robbery, pimping, and other criminal activities; [c] Keeping victims, potential victims,

17    and community members in fear of the enterprise and its members and associates through violence

18    and threats of violence; [d] Providing financial support and information to CDP members,

19    including those who were incarcerated; and [e] Providing assistance to other CDP members who

20    committed crimes for and on behalf of the gang, to hinder, obstruct, and prevent law enforcement

21    officers from identifying the offenders, apprehending the offenders, and successfully prosecuting

22    and punishing the offenders." Dkt. No. 139 at 8-9 (Second Superseding Indictment, ¶ 9).

23    On May 3, 2019, Elmore pleaded guilty to Racketeer Influenced and Corrupt

24    Organizations ("RICO") Act conspiracy (Count 1) and use or possession of a firearm in the course

25    of a crime of violence that caused the death of another under 18 U.S.C. § 924(j) (Count 8).  More

26    than a year earlier, I presided over a four-month long trial of five CDP members, all of whom were

27    found guilty.  Elmore's plea to Count 8 was based on *Pinkerton* liability for the underlying crime

28    of violence, the murders of Helton and Turner.  He was charged directly for those murders in

United States District Court
Northern District of California

United States District Court
Northern District of California

Counts 6 and 7 with co-defendant Charles Heard: Heard was tried with the first group of defendants, was found guilty for those murders, and received a mandatory life sentence without possibility of parole.  As part of Elmore's plea, in return for his commitment to not seek a sentence of less than 20 years, the government dismissed Counts 6 and 7.  I accepted Elmore's guilty pleas Counts 1 and 8 and then sentenced him to a term of 264 months in prison.

Elmore's plea was entered three days before jury selection was scheduled for the trial of the second group CDP members.  Immediately before the plea, as part of the colloquy, Elmore's counsel made the following assertion:

> We do acknowledge and believe that the Government would be in a position to prove that on August 14th of 2008 in furtherance of the charged conspiracy, a CDP member used a firearm in a crime of violence that caused the murder of Andre Helton and Isaiah Turner; that Mr. Elmore was a member of the same conspiracy at the time the crime was committed; that the crime was committed as consideration for a promise or agreement to pay something of pecuniary value or for purpose of gaining entrance to or maintaining position in CDP; and that the crime could reasonably have been foreseen to Mr. Elmore to be a natural consequence of the agreement.

Dkt. No. 2379 at 18:10–25.  I then asked, "Mr. Elmore, you heard what Mr. Cohen [Elmore's counsel] said.  Was all of what he said true?" *Id*. at 19:4–5.  Elmore replied, "[y]es, with respect to what my lawyer said, it was true." *Id*. at 19:6–7.  Elmore then pleaded guilty, and I accepted his plea.  *Id*. at 19:13–23.

During the first trial, the government presented considerable evidence that Elmore and co-defendant Heard were both responsible for the Turner and Helton homicides.  The testimony of a cooperator who had been a member of the gang, JB, testified that Elmore claimed responsibility for and bragged about the murders of Helton and Turner. *See, e.g.*, RT 4729- 4735.  JB said that Elmore at one point confessed to JB details of the crime that only the killer would have known: JB testified that Elmore admitted that defendant Heard was sitting behind the driver (Turner), Elmore was sitting behind the front passenger (Helton), and that Elmore shot both. *See, e.g.*, RT 4734, 4765.  Elmore told JB that Helton was armed with a pistol.  RT 4734-35.  There was also ample evidence of Elmore's other gang-related conduct in the first trial.

Because the government dismissed the VICAR murder Counts 6 and 7 as part of the plea bargain, in order for Elmore to succeed on his actual innocence arguments he must show that no

reasonable juror could find him guilty on those counts as well as Count 8. *See Bousley*, at 624. When I sentenced Elmore, I remarked because of reasonable doubt that I would not sentence him based on the assertion that he personally committed the murders. Yet aside from the question of whether the law has changed so that the charge is no longer viable, there is no doubt that a reasonable juror could have found him guilty on Counts 6 and 7 as the jury unanimously did for his co-defendant.

### C.    Elmore's Habeas Petition

In *Borden v. United States*, 593 U.S. 420 (2021), the Court held that offenses with a *mens rea* of recklessness do not qualify as violent felonies under the Armed Career Criminal Act ("ACCA"). Elmore argues that California murder permits conviction if a defendant has a *mens rea* of recklessness, and that after *Borden*, it is not a crime of violence under the elements clause of § 924(c)(3)(A). Earlier, in *United States v. Davis*, 588 U.S. 445 (2019), the United States Supreme Court held that the residual clause in § 924(c)(3)(B) was unconstitutionally vague. When Elmore entered his guilty plea, both the first clause of this definition—the "elements" or "force" clause—and the second—the "residual" clause—were in effect.

In Elmore's first petition for habeas relief, he argued that the relevant predicate crime for his § 924(j)(1) conviction was conspiracy (either to commit VICAR murder or RICO conspiracy). *See* Dkt. No. 2427 at 3-14 (First Habeas Petition). The government in opposition identified murder as the predicate crime of violence. I ordered the parties to submit additional briefing to address *Borden*, which had considered whether aggravated assault caused by a DUI could constitute a crime of violence. In his responsive supplemental brief, Elmore argued that murder under California law—the predicate crime for the VICAR murder charges—was not actually a crime of violence, and thus his § 924(j)(1) conviction was invalid. Dkt. No. 2496 (Supplemental Elmore Brief). After receiving additional briefing from the parties on this question, I denied Elmore's petition to vacate his conviction.

Elmore appealed. The Ninth Circuit reversed and remanded the case in October 2024 with instructions that I consider whether California murder constitutes a crime of violence under the "elements clause" of § 924(c)(3) such that California murder may properly serve as the predicate

1    crime for a § 924(j)(1) conviction.  It also directed me to address the procedural arguments raised

2    by the government in opposing Elmore's habeas petition; namely, that he had defaulted his right to

3    bring a § 2255 petition by waiting too long.

### D.    Legal Insufficiency and Actual Innocence

5    Elmore argues that he is actually innocent of his crime of conviction because, in light of

6    *Borden* and *Davis*, he could not be found guilty of the predicate crime that makes up the elements

7    of his § 924(j) charge.  Dkt. No. 2681 (Actual Innocence Brief).[3]  In response, the government

8    stresses the high societal costs of collateral review of convictions and the "very narrow" scope of

9    the actual innocence exception.  *Sawyer v. Whitley*, 505 U.S. 333, 340-41.  It urges that Elmore's

10   admission of guilt alone precludes any claim that he is factually innocent of VICAR murder.  Even

11   if he had not pleaded, the government says it would have provided a trial jury with "considerable

12   evidence of Elmore's guilt," satisfying the standard set forth by *Schlup*, 513 U.S. at 329

13   (explaining that the standard for assessing an actual innocence claim is like the standard under

14   Rule 29 – would any rational trier of fact find the defendant guilty?).  Dkt. No. 2686 at 11-15.

15   The government contends that Elmore does not assert "factual" innocence of his crime of

16   conviction, as the Supreme Court in *Bousley* required to make the actual innocence gateway

17   available, *see* 523 U.S. at 623, but rather asserts the kind of "legal innocence" springing from

18   "legal error" that the Ninth Circuit determined does *not* open the gateway.  *Gandarela v. Johnson*,

19   286 F.3d 1080, 1085 (9th Cir. 2002).  It points out that for purposes of this motion Elmore does

20   not dispute the facts of his offense or his conduct—he does not argue that he "did not do it" ("it,"

21   here, being the murders of Turner and Helton)—nor does he argue that the murders were not

22   criminal.  It urges that Elmore's argument against the validity of his § 924(j)(1) conviction does

23   not resemble those where courts have allowed petitioners to invoke the "actual innocence" excuse

24   and overcome procedural default.

25   In cases where actual innocence has been invoked to overcome procedural default, the

26   petitioners either argued that (1) they did not commit their crime of conviction, or (2) what they

27

28   _____

[3] The bulk of his actual innocence brief is his opening appellant brief to the Ninth Circuit, filed on May 25, 2023, challenging my decision to deny his initial habeas petition.

United States District Court
Northern District of California

1   did was not criminal in light of some intervening change of law.  Elmore's argument is most akin

2   to the second category.

3           The government asserts that, even in those cases that Elmore offers where petitioners

4   invoked actual innocence in light of an intervening change in law, the petitioners contended that

5   their conduct no longer satisfied the elements of the crime for which they were convicted,

6   distinguishing those cases from Elmore's, where he argues that the predicate crime itself no longer

7   satisfies the elements of his crime of conviction.  *See e.g. Vosgien*, 742 F.3d 1131 (the Ninth

8   Circuit held that petitioner could assert actual innocence for compelling prostitution after a change

9   in Oregon state law clarifying that compelling prostitution required a defendant to procure sexual

10   favors for a third party, not just for himself); *Ovsepian*, 113 F.4th at 1209 (petitioner's lack of use

11   of the stolen identity made him actually innocent of aggravated identity after an intervening

12   Supreme Court decision clarified the law); *Bousley*, 523 U.S. 614 (petitioner pleaded guilty to

13   "use of a firearm," but after a later Supreme Court decision requiring "active employment of a

14   firearm" for a conviction, the *Bousley* Court held that petitioner could claim actual innocence for

15   "use of a firearm").

16           Elmore is not contending, at least for now, that he did not commit California murder as

17   that crime is understood, or that the murders were not violent.  He is arguing that in light of an

18   intervening change in law between the date he pleaded and today, California murder no longer

19   constitutes a crime of violence as required by the VICAR statute for his crime of conviction, the §

20   924(j)(1) charge.  To analyze this theory, I would employ the modified categorical approach,

21   comparing the elements of the California murder statutes with the elements of 924 (j)(1).  "Under

22   that by-now familiar method . . . the facts of a given case are irrelevant."  *Borden*, 593 U.S. at 424.

23   If the elements match, Elmore would lose.  If they do not, specifically in determining whether

24   California murder is a crime of violence, Elmore would at least be on the pathway

25           I have struggled with the distinction between factual innocence, which leads to the

26   gateway, and legal insufficiency, which does not.  I have concluded that the alleged impropriety of

27   using California murder as a predicate crime of violence for purposes of the VICAR murder

28   statute is purely a legal claim, resulting in legal insufficiency and not factual innoncence.  *See*

9

United States District Court
Northern District of California

1    *Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012) (in a case in which petitioner urged that he

2    was actually innocent of being a career offender under the Sentencing Guidelines, the court found

3    that his was "a purely legal claim that has nothing to do with factual innocence"); *see also*

4    *Stephens v. Herrera*, 464 F.3d 895, 899 (9th Cir. 2006) (finding that a claim based upon an

5    erroneous jury instruction did not amount to an actual innocence claim). Because the question

6    Elmore raises in his petition is solely a matter of law, there is no need (or indeed ability) to

7    reanalyze the facts of the case. *Borden*, *supra*. In cases of actual innocence, including *Vosgien*

8    and *Ovsepian*, there was factual reanalysis after the changed legal circumstances that led to the

9    gateway of actual innocence.

10   Finding that Elmore's arguments warrant a finding of legal insufficiency and not actual

11   innocence comports with the dictate that instances of actual innocence should be extremely rare

12   because of the high societal costs of collateral review. It hardly seems a miscarriage of justice

13   when a reasonable juror could have found that Elmore was guilty of the violent murders of Helton

14   and Turner, and that merely reckless conduct was not involved.

15   There are strong legal arguments to the contrary. The court in *Ryan v. U.S.* identified what

16   it called the "right question" under *Davis* and *Bousley* as "whether, applying correct legal

17   standards to the trial record, [the petitioner] is entitled to a judgment of acquittal." 645 F.3d 913,

18   918 (7th Cir. 2011) (reversed and remanded on other grounds). Although I have not begun the

19   modified categorical analysis in this case, Elmore may be right that if the government were to

20   charge him in 2025 (as it did in 2013) using California murder as the predicate crime under the

21   VICAR statute for his § 924(j)(1) conviction, it could not prevail.[4]

22   But today, I am determining whether Elmore is entitled to reach the gateway to make that

23   argument because of his procedural default. The combination of the predicate crime required as

24   an element of the VICAR statute and the modified categorical analysis that precludes

25   consideration of the facts distinguishes this case from the others cited in this Order. In *Vosgien*,

26   
_____

27   [4] At the argument on this petition, government counsel acknowledged that it was unclear how
     Elmore could be charged today in federal court if *Borden* forecloses California murder as a crime
28   of violence.

10

1   because of a state appellate court decision clarifying the law regarding compelling prostitution

2   post-conviction, the petitioner's conduct was reanalyzed and he could establish actual innocence.

3   *See Vosgien*, 742 F.3d 1131.  The same was true in *Ovsepian*, where a Supreme Court decision

4   post-conviction allowed the petitioner to claim actual innocence because his possession of the

5   identifying information of H.T. did not include use. But no reanalysis of the facts is allowed in the

6   modified categorical analysis—if it was, a reasonable juror could find Elmore guilty of a violent

7   crime.  He is not claiming here that he is actually innocent of California murder.  Instead, he

8   argues that California murder can include recklessness, which the VICAR statute does not after

9   *Borden*.  That may be a good legal argument, but it is not factual innocence.

10          In sum, I conclude that it is not fundamentally unjust for Elmore to fail to pass through the

11   gateway of actual innocence when a reasonable juror could find that he was guilty of the deliberate

12   (not reckless) California murder of two men, the predicate acts for Counts 8, 6 and 7.  If Elmore is

13   right, *Borden* may invalidate California murder as a predicate crime of the federal VICAR murder

14   statute, but that says nothing about whether a reasonable juror would find that Elmore actually

15   committed a violent crime resulting in murder.

16          Elmore may still be able to pass through the gateway if he can establish ineffective

17   assistance of counsel for failure to file a notice of appeal.  That is the next step in this long-running

18   matter.

19          **E.      Next Steps**

20          I direct counsel to propose a schedule for addressing the issue of whether Elmore can

21   establish ineffective assistance of counsel.  I will hold a status hearing on September 18, 2025, at

22   1:30 p.m., by Zoom if desired, to discuss next steps.  Counsel shall file a joint statement either

23   stipulating to a process or proposing alternative schedules on or before September 16, 2025.

24          **IT IS SO ORDERED.**

25   Dated: September 8, 2025

26

27   

William H. Orrick
United States District Judge

28

11